Payne v. Newby.

---

## Payne v. Newby.

1. *Discussion of Evidence.*—In discussing the evidence the court arrives at a conclusion different from the finding of the court below, and reverses the judgment.

Memorandum.—Action of assumpsit. Appeal from a judgment rendered by the Circuit Court of Coles County; the Hon. FRANCIS M.

WRIGHT, Circuit Judge, presiding.   Heard in this court at the November term, A. D. 1892.   Opinion filed June 5, 1893.

The opinion of the court states the case.

JAMES W. CRAIG, attorney for appellant.

F. K. DUNN, attorney for appellee.

OPINION OF THE COURT, PLEASANTS, J.

This was an action of assumpsit brought by appellee on the 23d day of February, 1892, upon an alleged agreement of appellant to convey to him a certain described tract of land in Coles County.   Trial on the general issue, verdict for plaintiff $425, new trial denied and judgment entered.

The land was occupied by Robert F. Stark, as tenant of appellant under a lease from March 1, 1889, to March 1, 1892, with an option to purchase, at its expiration, on terms therein stated.   In the fall of 1891, appellee opened a correspondence with appellant for its purchase, which was conducted, on his part, mainly by Mr. Eli Wiley of Charleston.   The obstacle in the way was the position and interest of the tenant.   Appellant held two notes against him for rent, one past due, on which there was a balance of $50 in judgment, and the other for $300, due December 25, 1891, and the current year's crop was nearly ready to be hauled off.   He was anxious to get his rent and be released from all obligation under the lease, and the tenant desired to make what he could out of his option.   Appellee had tried to effect an arrangement with him which would be satisfactory to appellant, but had not succeeded.   In this situation appellant, at Topeka, Kansas, on October 21, 1891, wrote to Wiley as follows:

" Yours of the 19th to hand.   After considering the matter thoroughly, I think the best thing to do would be for you to have Newby and Stark come to your office, and with your help seek to try and effect a compromise of the trade between Newby and Stark, so as to have Newby take the

crop and release Stark, and Newby include the notes in his trade with me.    With this in view, I now make the following proposition, viz : That I receive for the farm and the two notes against Stark, free from your fees and all other expenses, except this year's taxes, the sum of $4,550; $1,500, down, and the balance in one, two and three years payments, at six per cent interest, secured by mortgage, in such size notes as may suit Mr. Newby, the first being no less than $1,000.

If nothing can be done with Stark to effect this, I want you to begin at once, and by some radical process of law, seize and take possession of the crop without leniency.    It is possible that you can effect some kind of a compromise with these parties by bringing them together again, and with my definite proposition to enlighten you as to what I am willing to sacrifice, you will have a basis to work on."

This is a proposition set forth in the single count of the declaration, and a complete copy of the letter is filed with it as a copy of the instrument sued on.    Manifestly it was intended to aid in bringing about a compromise between appellee and Stark, which should be satisfactory to appellant as well, and upon the condition of its accomplishment. The declaration does not aver specifically that any arrangement was or would or could be made with Stark, but does aver that the plaintiff accepted said proposition, and that in consideration that he had promised to pay and secure the $4,550 in the manner therein provided, and to do and perform all things on his part, in that behalf to be done and performed, the defendant promised to convey the real estate and deliver the notes to him within a reasonable time; and that although he was able, ready and willing to pay to the defendant, the said sum of $1,500, and to execute notes secured by mortgage as therein required for the residue, " and to do and perform all things on the part of the plaintiff in that behalf to be done and performed, whereof the defendant then and there had notice, and was then and there, to wit, on the day and year last aforesaid, requested by the plaintiff to convey the said real estate and deliver the said promissory notes to

him, the said plaintiff, the said plaintiff then and there of-
fering to pay him, the said defendant, the said sum of $1,500,
down, and to execute notes secured by mortgage as in said
proposition mentioned for the residue of said sum of $4,550
upon receiving such conveyance and said promissory notes,
yet the said defendant, not regarding his said promise and
undertaking, did not nor would," etc. (breach and damage
alleged in the usual form).

We do not think the declaration states a good case, or
that the averment of defendant's promise is sustained by the
letter relied on. Those preceding it, which were intro-
duced by plaintiff, showed a proposition to sell the land
only, and subject to Stark's rights, for $4,350. The one in
question includes the notes also, and contemplates a war-
ranty deed. Stark's rights were to be extinguished, by ar-
rangement between Newby and him. That was a condition
precedent to Newby's right to such a deed and the notes.
It is not true that appellant's promise was in consideration
that appellee had "undertaken and promised," among other
things, to obtain a release or extinguishment of Stark's
interest; that was to be actually done. It was not of a
nature to admit of a tender or offer of performance, as
equivalent. It required an act of Stark, which appellee
could not tender, nor offer to perform. If he had procured it
to be done, that was actual performance, which appellant
could not prevent or defeat. The declaration does not aver
that it was done. Until it was, and the evidence thereof
produced and offered to be shown to him, appellant was not
bound to execute a good and sufficient deed of the land and
deliver the notes. The offer or tender of the $1,500, and
the security mentioned for the residue refused, would not
put him in default; and since the declaration did not aver
that anything else was done by plaintiff or waived by
defendant to put him in default, it did not show a cause of
action.

Appellant, however, treated it as sufficient, by pleading
to it, and it is claimed by appellee that he did, in fact, pro-
cure an assignment of Stark's rights, and accept the proposi-

tion, and offered to comply with its other terms, and that appellant refused to execute the deed and deliver the notes.

The evidence is all in writing. There can be no dispute about what it is, nor is there in it any conflict. The only question, therefore, is, what does it prove?

We refer to so much of it as seems material. The proposition relied on was made October 11, 1891. On the 29th, Wiley, to whom it was addressed, answered as follows: "Since writing you, I have seen both Stark and Newby. They have had further conference, but can not trade. * * * Stark still thinks he has some advantage, which he has bargained to Newby on conditions. If Newby does not trade with you by the 15th November, then their trade about the contract is up. If you and Newby trade, he is to pay you the $50 back rent."

On November 3d appellant wrote to Wiley: "Your letter of the 29th inst. came duly to hand. * * * I think, under the circumstances, that I shall not close the trade with Newby or in fact any one, until I get rid of Stark. You may therefore begin civil suit for the balance of last year's rent, and if you have any legal excuse to restrain the sale of the crop, except for the payment of rent, do so."

This was a withdrawal of his proposition of October 21st. There is no pretense that it had then been accepted. That Newby had notice of it clearly appears from his letter to appellant of November 8th, saying that Wiley had read to him the one last above quoted, and proceeding, "Want to say to you when you made that proposition to take $4,350 subject to Stark's rights, told Mr. Wiley I would buy Stark's if I could and take the land. I saw Stark and traded with him—gave him $150 for the lease, paid him $25 down; was to pay him balance when you sent the deed; $50 and interest of that was to go to you. I was to have possession of the place January 1st. I have Stark's copy of the lease in my possession and have until the 15th of this month to trade with you, and at that time can keep it by paying him the balance on it." The "proposition" here referred to was in a letter of September 29th, and was for

the sale of the land alone, and subject to Stark's rights.  In this letter Mr. Newby says he accepted that proposition without any condition; but that was abandoned for the new one.  No claim was ever before made upon it, nor is any made now.  Appellant was never before informed of the terms or substance of the "trade" appellee then made with Stark, except as indicated in Wiley's letter of October 29th.  From this letter of appellee, appellant would understand it was upon conditions not likely to be complied with, especially that which required a trade with himself by the 15th of the month.  He probably did not receive the letter before the 10th.  On the 11th he replied to it, referring to Wiley's letter advising him of the failure to arrange the payments of the rent notes (under the earlier proposition) and his compromise offer of October 21st, and saying that he (Newby) had prematurely effected a trade with Stark, etc., and concluding as follows:  "If you will comply with the compromise offered in my letter of October 21st to Mr. Wiley, between now and December 1st, you can have the place on those terms.  The payments may be changed to more cash down if you choose to make it so."

It is said this revived the proposition, which is conceded to have been withdrawn, and that an acceptance, making it a binding agreement, is shown by a letter from Wiley to Payne, dated November 19, 1891, in which he says:  "Mr. Newby has shown me your recent letter to him and I saw what you wrote him, that is, that he could have the farm for $4,550, clear of all fees except taxes for 1891, which price, $4,550, should cover all rent due from Stark to you, $1,500 cash, balance in one, two or three years, second payment not less than $1,000, balance to be divided as he thinks best.  Deferred payments at six per cent interest with mortgage on premises to secure deferred notes, as shown by your letter of the 21st of October, to me, by you referred to.  He desires me to say to you that he accepted the proposition, but can not to-day, say whether he will pay you more than $1,500 down, as he wants to see the man in Douglas County that he sold to, in order that he may see if he can get more

money than the $1,500 to pay down. He will want the judgment against Stark on this $50 note transferred to him, also the lease and the $300 note, so that he can have the chance to collect the rent of Stark that he will in the trade pay you. These transfers will, of course, be without recourse on you, so I suppose you had better make and send deed at once, and also authorize me, as your attorney in fact, to assign the lease, note and judgment to Newby, so that he can, when trade is fixed up, look for his rent out of the crop that is now on this land. Answer."

Perhaps there may be a question whether the language of appellant's letter to Newby revived the proposition of October 21st, or made a new one, incorporating all the terms of the former and adding others, viz., that Newby should comply with them by the 1st of December next, and also that he might change by increasing the amount therein required to be paid down, if he should choose to do so. The latter can hardly be deemed wholly immaterial, because appellant, in a letter to Wiley of October 17th, relating to the earlier offer, and replying to Newby's suggestion that he would like to have the privilege of paying on the notes at any time before due, in sums not less than $100, had refused it, saying: "The back payments to me is an investment for interest." If these additions made it a new offer, then the declaration should have counted upon it, and the one counted on was not proved. It will be noticed that the alleged acceptance does not mention the limitation of time for compliance, nor fix (but expressly leaves unfixed) the amounts of the respective payments, both cash and deferred. And further and more important, that while reciting specifically the terms of the proposition, as he understood them, it makes no reference to the extinguishment of Stark's option to buy, and makes the payment down and notes for the residue secured by mortgage, as stated, the full extent of Newby's obligation.

Appellant notices this in his reply of November 23d, saying: "If I understand the letter, it means that Newby pays $4,550, and I assign the judgment note and lease to him.

As to the consideration this is right, but the mode don't strike me as was intended in my letter to you of October 21st. It would not prevent Stark from demanding what he might claim as his rights, that is, to purchase upon the conditions contained in the lease, and he could bring suit for damages on account of this sale. Now I want to avoid all contingencies of trouble or law suit with Stark, or any one else. From Mr. Newby's letter I glean that he obtained the lease from Stark. This does not amount to anything one way or the other. * * * If Stark will sign away his rights in the lease to Newby, that vitiates his claims on me, or," etc., (suggesting another method), by Newby's depositing $500 as security, and adding: " There might be some other way that our intentions could be carried out, but it is useless to make any propositions that leave me in any way involved with Stark or Newby. * * * I may have misunderstood your letter. If Newby has already bought Stark's privilege of purchase of him and has it properly transferred to him, Newby, then I am ready to make the deed and conclude the trade."

Appellant did not "make and send the deed at once," as Wiley had advised. He understood that an assignment of the lease by himself to Newby, which he inferred was what Wiley proposed, would not affect the rights of Stark. And further, that Newby had simply obtained possession of the lease from Stark, to be paid for as stated in Newby's letter of November 18th, but had no proper assignment in writing of Stark's interest. That letter said nothing of any such instrument. What he wanted, was, that Stark should "sign away his rights" in it. But he may have misunderstood, as to that, and added that if Newby had already bought and had them "properly transferred" to himself, then he was ready to make the deed and conclude the trade.

This was quite natural. It indicated no bad faith, but entire readiness to comply on his part with the offer he had made. He only wanted to have no misunderstanding and to know that Newby complied with the terms of that offer as he, Payne, intended and understood them.

Wiley took this view of the letter, and sought to correct his misapprehensions; for on the 24th he wrote : "I have your favor of the 23d inst., and note what you say. Newby's proposition is based on the fact that he now holds the assignment of the Stark contract with you which he has purchased of Stark. It is in black and white. Some time since, at Stark's request, I caused a copy of the lease in our hands to be supplied to him, as he wanted a copy. On this copy he has made an assignment to Newby of his contract with you, and Newby has it in his possession and has paid Stark in part for it. * * * Hope you will see your way clear to send deed and close up. *. * * Answer at once please, with deed."

But Wiley did not send the assignment referred to, nor any copy or particulars of it, nor say that he had himself seen it or a copy of it or what purported or was represented to be, or had any means of knowing or forming an opinion of its sufficiency for the purpose. Payne had a right to be furnished with the means of knowing that it was sufficient. He was not bound to take even the opinion of Wiley unasked. It was entirely proper that he should have, if he desired and requested it, a release to himself of all liability on the option provision. At least some proper evidence of it should be in his own possession or under his control. Such would have been the prudent, natural and usual course. Accordingly he wrote to Wiley on the 27th : " Yours of the 24th at hand. In reply would say that if Stark has sold his right of purchase to Newby and is satisfied, he will not object to signing the within agreement that I have drawn on the back of the copy that you sent me. Please fill in date and have him sign. Also fill in date and have Newby sign the lower agreement. Then have Newby define the terms, how much cash, and the definite payments, amounts of each, interest to be paid annually at Second National Bank. Return the note for his year's rent for my signature without recourse. Also send a mortgage blank. The judgment money he has provided for in the trade, so it won't be necessary for power of attorney. I will then exe-

cute deed and fill blank mortgage and draw notes for his signature and return to you."

Appellant had not then been informed of appellee's choice between $1,500 and a larger amount for the payment down, nor whether he had seen the Douglas County party. The amount of the deferred payments would depend on that choice. He therefore could not draw up the notes nor fill the blanks in the mortgage. Nor was it for him to do if he could. Appellee should have determined the amounts and prepared the papers. Appellant properly returned the blanks for that purpose. What he wrote to be signed by Stark was a simple waiver and transfer of his right to purchase the land to appellee; and by appellee an agreement to indemnify him against any claim for making the conveyance before the term had expired.

The next thing he learned about the matter was by letter from Wiley under date of December 11th, saying : "Your favor came duly to hand. It was a few days before I saw Mr. Newby. He signed the papers as you requested. Stark afterward came in but declined to sign, Newby then thinking he could get Stark to sign them by taking them to him, but he declined to do so. To-day Newby returned the papers and scratched his name off of it. He does not want to sign unless Stark will."

This closed the correspondence. It does not appear that Newby or Wiley said or did anything further with reference to the trade until 23d of February, when this suit was commenced.

We think the evidence entirely fails to show that appellee complied or tried to comply with the proposition of appellant as first offered or as renewed; that he ever tendered any money or notes or mortgage, or agreed upon the amounts to be paid down and those to be secured, or furnished any proper evidence of any arrangement with Stark by which his option was assigned, released or extinguished; that he was ever in condition to make a demand for the deed and note proposed, or that he ever did make it.

And it fails to show any disinclination of appellant to

have the terms of appellee's obligation definitely arranged, or, upon their performance, to execute the deed and deliver the notes. He demanded nothing unreasonable or unusual in relation to Stark's option. It was entirely proper that he should have exact information of the evidence of its extinguishment, and that it should reasonably appear to be sufficient. He did not demand any particular form, but only suggested or proposed one that would be satisfactory to himself. If it had in fact been extinguished, what he so proposed could not have harmed anybody, and was desirable to him. What Wiley had said of Stark and his refusal to sign the paper proposed, show that appellant had reason to ask for something of that kind. Yet it can not be known or presumed that he would have asked it, or been unsatisfied with the assignment that Newby was said to have obtained, if he had seen it or a copy of it or been told just what it was.

For the reasons stated, we think the court below erred in refusing to set aside this verdict. Its judgment will therefore be reversed and the cause remanded.